UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

FELIX MALDONADO                          CIVIL ACTION

VERSUS                                   NO. 13-6773

MATTRESS DIRECT, INC.                    SECTION "B"(1)

ORDER AND REASONS

I.   NATURE OF MOTION AND RELIEF SOUGHT

Before the Court is Defendant's, Mattress Direct of New Orleans, Inc. (previously incorrectly referenced in the Complaint and the caption of this case as Mattress Direct, Inc.), Motion for Summary Judgment, which seeks dismissal of Plaintiff's claims. (Rec. Doc. 29). Plaintiff, Felix Maldonado, opposes the motion as to certain of the claims asserted in his Complaint (Rec. Docs. 31, 1) and Defendant has filed a Reply (Rec. Doc. 35). For the reasons that follow, **IT IS ORDERED** that the Motion is **GRANTED.**

II. FACTS AND PROCEDURAL HISTORY

Defendant is a retail business that employs a sales force to sell mattresses and related accessories in stores located in Louisiana and other states. (Rec. Doc. 29-6 at 3). Plaintiff was employed by Defendant during two separate periods in the capacities of both salesperson and store manager. (Rec. Doc. 29-6 at 3). Plaintiff was first hired by co-owners, Ty Hingle and Lee Burns, in March of 2010 as a sales associate. (Rec. Doc. 29-

1

6 at 3). He resigned from that position in December of the same year. (Rec. Doc. 31 at 1). Thereafter, he was re-hired on the decision of Hingle, Burns, and Myra Guillot, Defendant's Vice President of Sales in August of 2011, a position he retained until his discharge on August 28, 2013. (See Rec. Doc. 32-2 at 3).

On May 19, 2013, during the course of his second term of employment with Defendant, Plaintiff filed a charge with the United States Equal Employment Opportunity Commission ("EEOC"), alleging, *inter alia*, that he had been subjected to disparate treatment on the basis of race/national origin (Plaintiff identifies as ethnically Hispanic and of Puerto Rican nationality) relating to an allegedly involuntary transfer between two of Defendant's stores in February 2013. (Rec. Doc. 1-1 at 1). This charge was the subject of a mediation proceeding arranged by the EEOC, in which both parties participated, and which culminated in Plaintiff's filing a "Request for Withdrawal of Charge of Discrimination" on July 8, 2013. (Rec. Doc. 1-2). That request was approved by the EEOC on July 12, 2013. *Id.*

Following mediation of the initial EEOC charge, on August 27, 2013, managerial employees of Defendant received a report from a customer that Plaintiff sold her a mattress cover for $50 cash without recording a cash register transaction or providing a customer receipt. (Rec. Doc. 29-6 at 4). Hingle (a co-owner

and Vice President of Defendant) and Guillot (Defendant's Vice President of Sales) allegedly visited Defendant's Houma location the following day to discuss the incident with Plaintiff. (Rec. Doc. 29-6 at 5). Upon discovering that Plaintiff was not at the store, which had been left unattended, Hingle and Guillot resolved that Plaintiff was to be terminated. (Rec. Doc. 29-6 at 5). Upon Plaintiff's return, Hingle communicated the fact of his termination to him and provided him with a notice of termination, stating as grounds: theft, leaving the store unattended, and employee and customer complaints. (Rec. Doc. 29-6 at 5).

Following his termination, Plaintiff filed a second charge with the EEOC on August 29, 2013. (Rec. Doc. 1-3). In that charge, he alleged discrimination based on race, national origin, and religion, as well as retaliatory discharge relating to his initial EEOC filing. *Id.* Specifically, Plaintiff alleged that, in May 2013, he requested but was denied permission to attend church services, even though other employees were allowed to take Sundays off for different reasons. *Id.* He further alleged that his discharge resulted from the customer complaint referenced *supra* but that he was never afforded an opportunity to explain the incident while other, non-Hispanic/Caucasian, employees had not been terminated for allegedly "more severe infractions." (Rec. Doc. 1-3). Finally, Plaintiff claimed his

discharge was the result of retaliation for the filing of his first EEOC charge.[1] *Id.* The EEOC issued a "Dismissal and Notice of Rights" on September 27, 2013 (Rec. Doc. 1-4), clearing the way for the filing of the instant suit pursuant to the procedural prerequisites of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq ("Title VII").

## III. CONTENTIONS OF MOVANT

Defendant argues summary judgment is appropriate because Plaintiff is unable to make out *prima facie* cases for either of his claims of discriminatory or retaliatory discharge. Further, Defendant argues that even if Plaintiff succeeds in establishing the *prima facie* elements of his claims, Defendant has presented legitimate non-discriminatory reasons for his discharge under the familiar *McDonnell Douglas* burden-shifting framework, and that the burden therefore reverted to Plaintiff to prove that such reasons were mere pretext (or, while true, were only part of the reason for the discharge -- a motivating factor of which was unlawful discrimination). Because, Defendant argues, Plaintiff has failed to establish the pretextual nature of the reasons asserted for his termination, his claims must be dismissed.

## IV. CONTENTIONS OF OPPONENTS

---

[1] The period of the alleged discrimination forming the basis for the second EEOC charge dated from August 10, 2013 to August 28, 2013 (the date of Plaintiff's discharge).

Plaintiff argues, apparently in complete reliance upon his own and Declarations by former employees Kirk Graham and Wayne Jonker, that triable issues remain as to whether non-Hispanic/Caucasian employees received favorable treatment as to disciplinary actions taken against them by Defendant's management personnel. Plaintiff further argues that the temporal proximity between the filing of his first EEOC charge and his ultimate discharge (a period of roughly three months) suffices for purposes of the causal element of an unlawful retaliation claim.

## V. SUMMARY JUDGMENT STANDARD

Summary judgment is proper if the pleadings, depositions, interrogatory answers, and admissions, together with any affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).  A genuine issue exists if the evidence would allow a reasonable jury to return a verdict for the nonmovant.  *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986).  Although the Court must consider the evidence with all reasonable inferences in the light most favorable to the nonmoving party, the nonmovant must produce specific facts to demonstrate that a genuine issue exists for trial.  *Webb v. Cardiothoracic Surgery Assocs. of N. Texas*, 139 F.3d 532, 536

(5th Cir. 1998). The moving party bears the initial responsibility of informing the district court of the basis for its motion. *Celotex*, 477 U.S. at 323. The movant must point to "portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits' which it believes demonstrate the absence of a genuine issue of material fact." *Id.* (citing Fed. R. Civ. P. 56). If and when the movant carries this burden, the nonmovant must then go beyond the pleadings and use affidavits, depositions, interrogatory responses, admissions, or other evidence to establish a genuine issue. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "[W]here the non-movant bears the burden of proof at trial, the movant may merely point to an absence of evidence, thus shifting to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial . . . . Only when 'there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party' is a full trial on the merits warranted." *Lindsey v. Sears Roebuck and Co.*, 16 F.3d 616 (5th Cir. 1994). Accordingly, conclusory rebuttals of the pleadings are insufficient to avoid summary judgment. *Travelers Ins. Co. v. Liljeberg Enter., Inc.*, 7 F.3d 1203, 1207 (5th Cir. 1993). "An affidavit or declaration used to support or oppose a motion must be made on personal

knowledge, set out facts that would admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R Civ. P. 56(c)(4).

## VI. DISCUSSION AND ANALYSIS

### A. The Scope of Plaintiff's Claims

As a preliminary matter, the Court must address the scope of the claims actually asserted by Plaintiff and disputed between the parties. Plaintiff appears initially to have asserted claims of: (1) race/national origin discrimination in his discharge, (2) religious discrimination, (3) race/national origin discrimination in involuntary transfer, (4) race/national origin and religiously discriminatory harassment (*i.e.*, a hostile work environment claim), (5) retaliatory discharge, and (6) violations of overtime compensation provisions of the Fair Labor Standards Act ("FLSA"). (See Rec. Doc. 1). Plaintiff's opposition to the instant motion for summary judgment, however, waives all but his claims of: (1) racially discriminatory discharge and (2) retaliatory discharge, both in violation of Title VII. (Rec. Doc. 31). Thus, the scope of the Court's analysis is limited to these two claims, and the other, waived, claims are **DISMISSED WITH PREJUDICE.**

### B. Plaintiff's Racial Discrimination Claim

Plaintiff has presented no direct evidence of discrimination in these proceedings. He may rely on

circumstantial evidence to support a claim of racial discrimination in violation of Title VII, but must do so within the *McDonnell Douglas* burden-shifting framework. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-805, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). In this context: (1) Plaintiff must establish a *prima facie* case of discrimination, (2) Defendant may rebut the discriminatory inference thereby raised by articulating legitimate non-discriminatory reasons for the adverse employment action taken, and (3) Plaintiff may then counter by offering evidence that Defendant's asserted reasons are mere pretext for unlawful discrimination. *See McDonnell Douglas*, 411 U.S. at 802; *Reed v. NeoPost USA, Inc.*, 701 F.3d 434, 439 (5th Cir. 2012).

**1. Prima Facie Discrimination**

To establish a *prima facie* case of discrimination on the basis of race or national origin, Plaintiff must establish: (1) that he was a member of a protected class, (2) that he was qualified for the position at issue, (3) that he was subjected to an adverse employment action, and (4) that the adverse employment action resulted because of his membership in the protected class. *See, e.g., Abarca v. Metro. Transit Auth.*, 404 F.3d 938, 941 (5th Cir. 2005). Defendant concedes Plaintiff's membership in a protected class (Hispanic) and that he was the subject of an adverse employment action, namely his discharge.

However, Defendant challenges Plaintiff's ability to establish that he was qualified for his position and that he was discharged because of his Hispanic ethnicity. Each of these contentions is examined below.

### a. Job Qualification

Defendant argues that Plaintiff was not qualified for his position, store manager, at the time of his discharge, based on the misconduct for which his employment was terminated. (See Rec. Doc. 29-6 at 9). Specifically, Defendant argues that Plaintiff was required to be courteous, not rude, to customers and further to follow store policy, for instance by not selling merchandise without a receipt, leaving stores unattended, etc. *Id.* To challenge Plaintiff's qualification, Defendant cites evidence of customer complaints lodged against him as well as documented instances of Plaintiff's leaving stores unattended, including particularly the instance referenced *supra* on the date of his discharge.

In response, Plaintiff argues record evidence reflects that he was qualified for his position, chiefly by virtue of the undisputed fact that he was an effective salesperson in terms of revenue generated during his tenure. (See Rec. Doc. 31 at 4). Plaintiff cites Florida district court cases in support of his position that satisfactory performance levels alone are

sufficient to establish the element of job qualification. *See* (Rec. Doc. 31 at 4)(citing *Mora v. Univ. of Miami*, 15 F. Supp. 2d 1324 (S.D. Fla. 1998); *EEOC v. Martin Marietta Corp.*, 819 F. Supp. 1030, 1034-35 (M.D. Fla. 1993). Not only are such decisions not binding on this Court, they are further distinguishable from and inapposite to the case at bar. There is no dispute that Plaintiff here was terminated for alleged misconduct. At no time has Defendant argued that some deficiency in Plaintiff's sales performance led to the decision to terminate him. In both of the cases relied upon by Plaintiff, the standard applied to assess job qualification related specifically to job performance. *See, e.g., Mora*, 15 F. Supp. 2d at 1335 (The case draws its standard from a Seventh Circuit opinion wherein the purported reason for the plaintiff's termination was deficient performance: *Flowers v. Crouch*-Walker, 552 F.2d 1277 (7th Cir. 1977)); *Martin Marietta Corp.*, 819 F. Supp. at 1034 (wherein the plaintiff was passed up for a promotion on purported grounds of failing to satisfy the requirements for the job). Thus, evidence indicating that the terminated employee previously maintained satisfactory performance levels was germane to the Plaintiff's ultimate burden of proving that the basis for the adverse employment action was actually unlawful discrimination. *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511, 113 S.Ct. 2742

(1993)("the Title VII plaintiff at all times bears the 'ultimate burden of persuasion'").

The requirements for establishing job qualification are case-specific and this Court concludes that there is sufficient evidence to support the conclusion that the various instances of misconduct documented in the record support a finding that Plaintiff was not qualified for his position at the time of his discharge. The Court is aware of no precedent that would hamstring employers in the manner suggested by Plaintiff, opening them to suit for liability for termination of an employee engaged in misconduct who otherwise performs at adequate sales levels. Nevertheless, because further deficiencies in Plaintiff's *prima facie* case stand as obstacles to the maintenance of his claims, the Court may assume *arguendo* that he was qualified for the position in question without material impact on the resolution of the instant motion.

### b. Favorable Treatment

Under the fourth element of his *prima facie* claim of racial discrimination, Plaintiff may satisfy his burden by establishing that he was treated less favorably than non-Hispanic/Caucasian employees because of his membership in a protected class. *Abarca*, *supra*, 404 F.3d 938; *O'Neal v. Roadway Express* 181 Fed.

App'x 417, 418 (5th Cir. 2006).[2] Defendant argues Plaintiff has failed to identify any similarly situated non-Hispanic comparator treated more favorably than he under nearly identical circumstances. See (Rec. Doc. 29-6 at 10)(citing *Batiste v. Touro Infirmary Hosp.*, 2001 U.S. Dist. LEXIS 2431, p. 9 (E.D. La. 2001); *Smith v. Wal-Mart Stores (No. 471)*, 891 F.2d 1177, 1180 (5th Cir. 1990). Further, Defendant presents evidence that non-Hispanic employees were discharged for engaging in some of the same instances of conduct for which Plaintiff was discharged. *See* (Rec. Doc. 29-6 at 11). These include: Robert Hampton, a former store manager discharged for leaving a store unattended, and Paul Krieger, a former salesperson terminated after an accusation of theft, leaving a store unattended, and receiving customer complaints. (Rec. Doc. 29-6 at 11).

In response, Plaintiff appears to rely exclusively on the declarations of former employees, Kirk Graham and Wayne Jonker.[3] Graham's declaration provides, in relevant part:

---

[2] The Court is unpersuaded by Defendant's pedantic argument as to the standard cited by Plaintiff to enumerate the elements of his *prima facie* case. (See Rec. Doc. 32-1 at 2). The substance of Plaintiff's argument focuses on the relevant factors and, as counsel should be well aware, the federal courts have, for the better part of a century, abandoned the technical form-pleading of our early English forebears.

[3] Plaintiff's reliance appears to be exclusive in this respect because Plaintiff himself, under examination at deposition, effectively conceded having no personal knowledge of any specific instances of disparate disciplinary treatment. See (Rec. Doc. 29-3 at 66 - 67):

Q. Okay. What other situation, or situations, do you have personal knowledge of – meaning you witnessed it – of a Mattress Direct salesperson selling something, being allowed to sell

. . . I personally observed that despite any policy purportedly enforced by upper management, Caucasian and non-Hispanic salespersons were actually allowed to routinely purchase products, including mattresses and bedding with employee discounts, and then resell those products for personal gain without any punishment or discipline imposed on them. This included, on occasion, resale of those products in Mattress Direct of New Orleans, Inc. stores.

. . . I personally observed and gained knowledge as a team leader of situations in which Caucasian and non-Hispanic salespersons, were allowed to lock and close Mattress Direct of New Orleans, Inc. stores during restroom breaks, lunch breaks, or for other personal reasons without any discipline being taken against them.

. . . I personally observed and gained knowledge as a team leader of situations in which Caucasian and non-Hispanic salespersons received customer complaints and/or negative customer comments while employed by Mattress Direct of New Orleans, Inc., but no disciplinary action was taken against them.

. . . Based upon my personal discussions with members of upper management at the Vice-President and President level, the owners and management of Mattress Direct of New Orleans, Inc. had actual knowledge of

---

something off the register without a receipt? A. Jacques sold some pads, pillows. Charlie has done the same. They all have. Brock, Ryan. All of my white colleagues have done the same. Q. Okay. My question is about specific situations that you have witnessed wherein this has occurred. So let's talk about you said Jacques sold some pads and pillows. A. Yes. Q. When did that happen? A. I don't recall when it happened. But he did. Q. What store did it happen at? A. He worked in several stores. . . . So it could have been any store . . . . Q. Did you ever personally witness a sale transaction that Jacques made that was not run through the register and for which he did not give a receipt. A. No. Not personally witness. No. Q. Did you personally witness anyone make a sale transaction that they did not run through the register and for which they did not give a receipt? A. No.

the foregoing actions by salespersons and
misconduct and did not take action against
the offending Caucasian and non-hispanic
salespersons.

(Rec. Doc. 31-4 at 1 - 2). Jonker, for his part, stated:

. . . I personally know that Mattress Direct
of New Orleans, Inc. had several policies
which were put in place by upper management
above the store and team leader level, but
which were not enforced in actual practice.

. . . based upon my personal knowledge
Caucasian and non-Hispanic employees [sic]
Mr. Maldonado received customer complaints
without being disciplined for them.

. . . I personally observed and gained
knowledge of employees at Mattress Direct of
New Orleans, Inc., including other Caucasian
and non-Hispanic salespersons, buying
mattresses and other bedding products with
employee discounts and then reselling them,
including reselling them through company
store locations. This was contrary to the
stated policy put in place by upper
management.

. . . I personally observed and gained
knowledge that there were large amount [sic]
of inventory missing from more than one
location such that the apparent problem was
one of either theft or complete failure, yet
Caucasian and non-Hispanic. [sic] This was
contrary to the stated policy put in place
by upper management.

. . . Based upon my personal discussions
with Vice-President Myra Guillot, the owners
and management of Mattress Direct of New
Orleans, Inc. had actual knowledge of the
foregoing actions by salespersons and
misconduct and did not take action against
the offending Caucasian and non-Hispanic
salespersons. Ms. Guillot responded that
upper management would deal with the

> situations I presented to her, but those
> issues were not resolved as of the time I
> resigned.

(Rec. Doc. 31-5 at 1 – 3).

Defendant initially challenges the sufficiency of these declarations for creating genuine issues of material fact to survive summary judgment. Under the controlling standards of Rule 56, a "declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). Further, "conclusory rebuttals of the pleadings are insufficient to avoid summary judgment." *Travelers Ins. Co. v. Liljeberg Enter., Inc.*, 7 F.3d 1203, 1207 (5th Cir. 1993). Not only does the latter declaration suffer from the deficiency of borderline incoherence, neither identifies any specific instances of conduct, specific employees alleged to have received favorable treatment when compared with Plaintiff, or specific facts forming the basis of any alleged personal knowledge. As noted above, for purposes of the fourth element of his claim, Plaintiff succeeds if he establishes that he was treated less favorably than non-Hispanic/Caucasian employees because of his membership in a protected class. This requires him to identify similarly situated employees who received favorable treatment under nearly identical circumstances. His

inability to offer competent summary judgment proof as to a single discrete instance pertaining to any single individual is fatal in this respect. Additionally, Defendant has offered proof that non-Hispanic employees were terminated for similar infractions, further weakening his claim.

Plaintiff's arguments as to the degree of precision required for another employee's use as a "comparator" are misguided in two respects. First, Plaintiff misconstrues entirely the burden of proof at this phase, which resides with him until he satisfies the elements of his *prima facie* case. Unless he does so, no inference of discrimination applies. Defendants, moreover, are entitled in the context of a summary judgment motion where, as here, the non-movant bears the ultimate burden of proof, to point to an absence of support for an element of the plaintiff's claim. Defendant's indications that non-Hispanic employees were terminated for similar infractions serve this purpose in that they make it less likely that Plaintiff could establish any discriminatory motive pertaining to his discharge. Secondly, Plaintiff misconstrues how to qualify another employee for analysis as a comparator:

> We do not, however, interpret "nearly identical" as synonymous with "identical." Applied to the broader circumstances of a plaintiff's employment and that of his proffered comparator, a requirement of complete or total identity rather than near identity would be essentially

insurmountable, as it would only be in the
rarest of circumstances that the situations
of two employees would be totally identical.
For example, it is sufficient that the
ultimate decisionmaker as to employees'
continued employment is the same individual,
even if the employees do not share an
immediate supervisor. Each employee's track
record at the company need not comprise the
identical number of identical infractions,
albeit these records must be comparable. As
the Supreme Court has instructed, the
similitude of employee violations may turn
on the "comparable seriousness" of the
offenses for which discipline was meted out
and not necessarily on how a company codes
an infraction under its rules and
regulations. Otherwise, an employer could
avoid liability for discriminatory practices
simply by coding one employee's violation
differently from another's.

*Lee v. Kansas City S. Ry. Co.*, 574 F.3d 253, 260-61 (5th Cir.

2009)(internal citations omitted). Defendant has identified two

non-Hispanic individuals who were discharged for comparable

offenses. Plaintiff has not identified a single non-Hispanic

individual who received favorable treatment under similar

circumstances. He has failed to carry his burden of proving the

elements of a *prima facie* case of discrimination. The foregoing

alone would support a conclusion that summary judgment in favor

of Defendant was warranted. Nevertheless, the Court has further

grounds for doing so, which are discussed below.

**2. Legitimate Non-Discriminatory Reasons for Discharge**

Even if Plaintiff had succeeded in making out a *prima facie*

case of racial discrimination, Defendant would be permitted to

rebut the non-discriminatory inference raised thereby by articulating legitimate non-discriminatory reasons for Plaintiff's discharge. *McDonnell Douglas*, 411 U.S. at 802. Here, Defendant argues that documented customer complaints, instances of Plaintiff's leaving stores unattended, and allegations of theft (*viz.*, the allegation that he sold personal merchandise in an undocumented transaction through the store), all serve as legitimate non-discriminatory reasons for his discharge. The Court agrees. *See, e.g., Becerra v. Ms. Ellie's Kitchen*, No. 11-1833, 2012 WL 5363793, at *6 (E.D. La. Oct. 31, 2012)(recognizing, *inter alia*, suspected theft as legitimate non-discriminatory ground for termination); *Winter v. Bank of America*, No. 02-1591, 2003 WL 23200278, at *4 (N.D. Tex. Dec. 12, 2003)(inordinate number of complaints and unprofessional demeanor). In order for Plaintiff's action to proceed therefore, he would need to establish that the proffered reasons for his termination were mere pretext for unlawful racial discrimination.[4] *McDonnell Douglas*, 411 U.S. at 802. Indeed, even if Plaintiff had presented any evidence of pretext, the inference of discrimination on the part of Defendant in this instance would be further weakened by application of the "same-actor" inference, which is drawn by courts in the Fifth Circuit.

---

[4] While an alternative method for so doing would be to invoke the so-called "mixed-motives" analysis, Plaintiff has not done so in the present case. Compare*, Rachid v. Jack In The Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004).

*See Pillette v. M-I L.L.C.*, 2012 WL 5349386, at *4 (E.D. La. Oct. 29, 2012)(Lemelle, J.); *Brown v. CSC Logic Inc.*, 82 F.3d 651, 658 (5th Cir. 1996). This is "a presumption that discrimination is not the motive behind the plaintiff's discharge when a plaintiff is discharged by the same person who hired or promoted him." *Brown*, 82 F.3d at 658. "From the standpoint of the putative discriminator, it hardly makes sense to hire workers from a group one dislikes (thereby incurring the psychological costs of associating with them), only to fire them once they are on the job." *Id.* (internal quotations omitted). Indeed, "where the actor involved in both employment decisions is also a member of the protected class," the inference is only enhanced. *Id.*

There is no dispute that the initial hiring decision at the time of Plaintiff's first period of employment was made by co-owners Ty Hingle and Wiley Lee Burns, III.  There is further no dispute that Hingle, Burns, and Myra Guillot, who is of Hispanic descent, were involved in the decision to re-hire Plaintiff for his second period of employment in 2013.  Hingle and Guillot also both participated in the decision to promote Plaintiff to the position of store manager during his second period of employment. As to Plaintiff's discharge in 2013, Defendant contends that the three foregoing individuals were involved in the decision. There is some contradiction in this respect in the

deposition testimony of Hingle, who indicated that the termination decision was made on the spot by himself and Guillot, which decision was ultimately communicated via telephone to Burns (who, in any event, does not appear to have presented any objection).[5] Thus, it remains undisputed that, at the very least, Hingle and Guillot participated in the ultimate decision to terminate Plaintiff. All of this is to say that the undisputed record evidence establishes that Hingle participated in all hiring decisions relating to Plaintiff and also in his termination. Guillot further participated in his re-hiring for a second period of employment and his termination. Defendant is entitled to the same-actor inference as to both individuals. Guillot's participation, as a member of the same protected class as Plaintiff, further weakens any pretextual argument or inference of discrimination that might otherwise apply. Plaintiff has utterly failed to rebut the legitimate non-discriminatory reasons asserted for his termination. Accordingly, **IT IS ORDERED** that Defendant's Motion is **GRANTED**, **DISMISSING WITH PREJUDICE** Plaintiff's racial discrimination claim.

---

[5](See Rec. Doc. 31-2 at 44)(Deposition of Hingle): ("Q. And you and Miss Guillot made that decision on site? A. That's correct. Q. Without calling Mr. Burns? A. That's correct. Q. So to be crystal clear here, Mr. Burns had no role in that decision? A. That is correct."); *cf.* (Rec. Doc. 32-3 at 4, ¶ 23)(Amended Declaration of Hingle)("Lee Burns, M. Guillot and I participated in the decision to discharge Plaintiff for theft, leaving the store unattended, and employee and customer complaints.")

**C. Plaintiff's Retaliation Claim**

A *prima facie* case of retaliation requires Plaintiff to establish: (1) that he engaged in a "protected activity" as defined under Title VII, (2) that he was subjected to an adverse employment action, and (3) a causal connection between the protected activity and the adverse employment action. *See McCoy v. City of Shreveport*, 492 F.3d 551, 556-57 (5th Cir. 2007). Here, there is no dispute that the filing of Plaintiff's first EEOC charge was a protected activity, nor that his termination amounted to an adverse employment action. Accordingly, the only issue remaining is as to whether there has been a causal showing made between the foregoing two elements.

Both parties have overlooked controlling precedent on the causal element of a Title VII retaliation claim, which issue was recently examined by the Supreme Court. In *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 133 S.Ct. 2517 (2013), the Court considered the argument that the causal element of a retaliation claim should be satisfied under the lesser "motivating-factor" standard, as opposed to traditional principles of "but-for" causation. However, the Court held: "[t]he text, structure and history of Title VII demonstrate that a plaintiff making a retaliation claim under § 2000e-3(a) must establish that his or her protected activity was a but-for cause of the alleged adverse action by the employer." *Id*. at 2534. "This requires

proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." *Nassar*, 133 S.Ct. at 2533. Accordingly, Plaintiff here must establish that, had he not filed his initial charge with the EEOC, he would have continued in his position. *See, e.g., Finnie v. Lee Cnty., Miss.*, 541 Fed. App'x 368, 371 (5th Cir. 2013). In order to survive summary judgment, "the plaintiff must show a conflict in substantial evidence on the question of whether the employer would not have taken the action 'but for' the protected activity." *Coleman v. Jason Pharms.*, 540 Fed. App'x 302, 304 (5th Cir. 2013)(internal quotation marks omitted).

While neither party has argued under the appropriate causal standard, the record evidence clearly shows that Plaintiff is unable to satisfy his burden under the but-for standard. The evidence demonstrates that, after the filing of the first EEOC charge, the parties engaged in mediation proceedings, after which point Plaintiff was returned to work. His discharge did not occur until more than three months after the mediation. Additionally, and of particular import, the complaint relating to his having engaged in an undocumented, allegedly personal, transaction with a customer, and further his absence from the store at the time Hingle and Guillot arrived to discuss that complaint with him, amount to intervening events sufficient to

disrupt any allegation of temporal proximity between the EEOC filing and Plaintiff's discharge. Indeed, these latter two items form the clear basis for Plaintiff's discharge and there is nothing to suggest that but for his filing of the first EEOC charge, he would have remained in his position. Accordingly, Plaintiff has failed to establish a *prima facie* case of unlawful retaliation, and **IT IS ORDERED** that Defendant's Motion is **GRANTED** to **DISMISS WITH PREJUDICE** his retaliation claim.

## VII. CONCLUSION

In light of the foregoing, Plaintiff has failed to carry his burden in order to survive Defendant's Motion for Summary Judgment on his claims of: (1) race/national origin discrimination and (2) unlawful retaliation. He has further waived any other claims previously raised in his Complaint. Accordingly, and for the reasons articulated above,

**IT IS ORDERED** that Defendant's Motion (Rec. Doc. 29) is **GRANTED**, and Plaintiff's claims are **DISMISSED WITH PREJUDICE.**

New Orleans, Louisiana, this 26th day of March, 2015.


_____
UNITED STATES DISTRICT JUDGE